McMullen, a De Facto Guardian, Appellee, *v.* Muir, Appellant.

(No. 51242—Decided December 4, 1986.)

*Robert J. Greene,* for appellee.
*Joseph L. Newman,* for appellant.

ANN McMANAMON, J. Thomas E. Muir appeals a decision of the court of common pleas, domestic relations division, determining that he is the natural father of Elizabeth Ann Muir and ordering him to provide for her support. His timely appeal raises seven assignments of error.[1]

Twila E. McMullen, the maternal grandmother of Elizabeth Ann Muir, brought this action on behalf of her granddaughter, pursuant to R.C. Chapter 3115, the Uniform Reciprocal Enforcement of Support Act ("URESA"), to obtain support payments from the defendant. The child has resided with her grandmother almost continuously since the age of four weeks. As provided under the

---

[1] See Appendix at 247.

statute, McMullen filed this action in her resident state, Pennsylvania, from which the complaint was certified and transmitted to Cuyahoga County, Ohio, the residence of Thomas Muir. See R.C. 3115.12.

The record reveals that Elizabeth Ann Muir was born out of wedlock on May 8, 1967 to Charlotte Jean Roeber, now Charlotte Jean Muir. Henry Roeber, from whom Charlotte Jean Muir was divorced three years prior to Elizabeth's birth, is listed as the child's father on her birth certificate. It is undisputed that, at the time of the child's conception, Charlotte Muir was involved in a sexual relationship with Thomas Muir, whom she subsequently married. Elizabeth testified at the hearing that Muir admitted to her that she was his daughter, and contributed to her support over the years until 1984. The record further reveals that in early 1984 Muir became highly critical of Elizabeth Ann's involvement with a man approximately six years her senior. In a letter dated February 17, 1984, Muir informed McMullen that because of her tolerance of this relationship he would no longer contribute to Elizabeth Ann's support. McMullen then filed this action for future support for her granddaughter.

A domestic relations referee took evidence, reported that Muir was the child's natural father, and recommended that McMullen's request for support be granted. The trial court adopted the referee's findings over the objection of the defendant and this appeal followed.

I

In his first and third assignments of error, Muir asserts that the trial court erred by overruling his motion to dismiss and by not allowing him to file an answer in response to McMullen's complaint.

In his motion to dismiss, Muir basically argues that McMullen's complaint fails to state a cause of action because it does not assert that Muir is the natural father of Elizabeth.

R.C. 3115.09 sets forth the requirements of an URESA complaint. It provides, in pertinent part, that:

"(A) The complaint shall be verified and shall state the name and, so far as known to the obligee, the address and circumstances of the obligor and the persons for whom support is sought, and shall state all other pertinent information.

"The obligee may include in or attach to the complaint any information which may help in locating or identifying the defendant * * *."

A review of McMullen's complaint reveals adequate compliance with R.C. 3115.09. McMullen states that the action is brought on behalf of Elizabeth Muir; it lists Thomas E. Muir as the defendant and includes his address; it states that Elizabeth was born out of wedlock and alleges that Thomas E. Muir has neglected his duty to support the child. While the defendant correctly asserts that McMullen does not explicitly allege that Muir is the father of Elizabeth, the statute does not require such allegations to be specifically asserted. In any event, such an inference can be gleaned from the face of the complaint.

It is well-established that in order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted, it must appear beyond a doubt that the plaintiff can prove no set of facts establishing his right to recovery. *O'Brien* v. *University Community Tenants Union, Inc.* (1975), 42 Ohio St. 2d 242, 71 O.O. 2d 223, 327 N.E. 2d 753. This court finds that McMullen's complaint is sufficient to withstand a motion to dismiss. Therefore, the trial court did not err in denying Muir's motion.

Muir also contends that the trial

court impermissibly precluded his right to file an answer.

McMullen responds that the defendant was not entitled to file an answer because the Ohio Rules of Civil Procedure are inapplicable to URESA hearings. She cites Civ. R. (1)(C) which provides, in relevant part:

"These rules, to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure * * * (5) in uniform reciprocal support actions * * *."

We do not agree with McMullen's broad assertion that the Civil Rules never apply to URESA proceedings. Rather, we note that the language of the rule is more limited and merely states that the rules will not govern when clearly inapplicable by their nature. However, under the facts of this case we do not believe that the trial court erred in not permitting the defendant to file his answer.

URESA proceedings are conducted informally and pleadings are not necessary to defend an action. 13 Milligan, Ohio Practice, Family Law (1975) 675, Section 2000. Generally, a defendant asserts his defenses during the hearings. See R.C. 3115.24. The record reveals that Muir was provided an opportunity to raise any defenses which might normally be asserted in an answer. The fact that he chose to ignore a subpoena to appear at the hearing does not now provide a basis for complaint. Furthermore, we note that, in spite of his absence, defense counsel persistently attempted to prove that Muir was not the father of Elizabeth. Therefore, we do not find that the trial court erred in not allowing Muir to file an answer.

Accordingly, the defendant's first and third assignments of error are overruled.

II

Muir's second assignment of error asserts that McMullen is not the legal guardian of Elizabeth and, therefore, is not the proper party to bring this action.

In support of his position, Muir cites R.C. 3115.11 which provides in pertinent part:

"A petition on behalf of a minor obligee may be brought by a person having legal custody of the minor without appointment as guardian ad litem."

Although R.C. 3115.11 does not define the term "legal custody," we recognize that non-parental custody generally is determined by the court. See R.C. 3109.04. Since the record does not indicate that a court ever awarded McMullen custody of Elizabeth, we must determine whether, in the absence of such a court order, McMullen may bring this action on Elizabeth's behalf.

Because this issue has not been ruled upon in Ohio, we must examine the purposes for which R.C. Chapter 3115 was enacted. We find that URESA was instituted to facilitate actions for child support with its provisions to be liberally construed. Certainly, the primary focus of the statute is the duty of support owed by a parent. On the other hand, R.C. 3115.11, cited by the defendant, does not explicitly state that only the legal guardian of a child to whom such a duty is owed may bring an URESA action. Rather, it is designed to obviate the need for the appointment of a guardian ad litem. We do not believe the legislature intended to prevent actions brought by individuals such as McMullen, who have accepted the burden of child care, as *de facto* guardians. This interpretation is supported by decisions in other jurisdictions.

In *Saask* v. *Yandell* (Alaska 1985), 702 P. 2d 1327, Saask provided support for his former wife's son after the child's mother and Saask divorced.

The California Child Support Enforcement Agency instituted an action on Saask's behalf against Jack Yandell, the child's father, to recover arrearages in support payments. The lower court dismissed the suit on the ground that Saask did not have legal custody of the child. The Alaska Supreme Court focused on the father's duty to support his son and held that "it would make no sense to deny a child's de facto guardian standing to seek financial support or reimbursement from one legally obligated to support that child." *Saask* at 1330.

A similar decision was reached in *Sudduth* v. *Scott* (Fla. App. 1981), 394 So. 2d 536, where a grandmother cared for a legally blind adult child without the benefit of "legal" custody. The *Sudduth* court held that, given the fact that the child's parents knew of the arrangement and had given their consent, the grandmother had standing to bring an URESA action on behalf of the child.

In the instant case, it is undisputed that Charlotte Muir allowed her mother to assume the care of Elizabeth Ann from the time she was four weeks old and that the grandmother continuously provided care for the child, except for two years when Elizabeth Ann lived with an aunt. The record reveals that both Charlotte and Tom Muir consented to this arrangement and visited the child numerous times at the home of the grandmother. Over the years, Tom Muir paid McMullen's utility bills and contributed in other ways to the child's support. It is clear that until the period immediately preceding this suit, Thomas Muir did not in any way object to Elizabeth Ann's residing with her grandmother. We do note that in Muir's letter announcing that he would no longer contribute to the child's support, he stated that he did not approve of the child's living arrangement. However, the record does not reveal any attempt by the Muirs to remove the child from McMullen's home. In light of these facts and circumstances, we find that the trial court did not err in allowing McMullen standing to pursue this action.

Defendant's second assignment of error is not well-taken.

### III

In his fourth assignment of error Muir asserts that the trial court erred in determining that he had raised the defense of non-paternity. Muir now appears to argue that, since he did not file an answer to McMullen's complaint, the court cannot consider the issue of Elizabeth's paternity. We disagree.

R.C. 3115.24 provides:

"If the obligor asserts as a defense that he is not the father of the child for whom support is sought and it appears to the court that the defense is not frivolous, and if both of the parties are present at the hearing or the proof required in the case indicates that the presence of either or both of the parties is not necessary, the court may adjudicate the paternity issue. Otherwise the court may adjourn the hearing until the paternity issue has been adjudicated."

The statute does not state that the defense of non-paternity may only be raised in an answer. As we previously noted, URESA hearings are conducted with an air of informality and a defendant may raise his defenses at the time of trial.

In the instant case, the defendant clearly raised the defense of non-paternity in his motion and through the ensuing proceedings. Muir's motion to dismiss basically asserted that he was not Elizabeth's natural father and, therefore, did not owe her a duty of support. Furthermore, a review of the hearing transcript reveals that the defendant's strategy was to establish

that Roeber was Elizabeth's natural father and to refute all allegations that Thomas Muir owed her any duty.

We note that R.C. 3115.24 provides that parties should be present unless there is sufficient proof before the trial court to indicate that their presence is not necessary. In the instant case, we find that the referee was warranted in conducting a hearing on the issue of paternity despite Muir's absence. Muir waived any statutory right to be present by willfully disregarding a subpoena commanding him to appear at the hearing. The record reveals that, upon receipt of the subpoena, Muir handed it to his attorney and left for Florida.

For the foregoing reasons, we find that the trial court properly determined that the defendant asserted a defense of nonpaternity.

This assignment of error is not well-taken.

## IV

Muir's fifth assignment of error contends that the trial court made numerous improper evidentiary rulings.

Initially, the defendant seems to argue that matters of public record such as Elizabeth's birth certificate were not appropriately considered by the court. Muir places great weight on the fact that Roeber's name appears on the child's birth certificate. This reliance is misplaced. Although public records are clearly admissible as exceptions to the hearsay rule, they are not necessarily dispositive of the facts stated therein. Such documents are evidence to be weighed by the trier of fact. Furthermore, R.C. 3705.14 requires that both the father and the mother of a child born out of wedlock must sign the birth certificate as informants. This Roeber did not do.

Muir also cites much of the referee's report in support of his argu-

ment. A review of the transcript upon which the referee's findings are based reveals that hearsay evidence was improperly admitted on a number of occasions. For example, McMullen was permitted to testify that her daughter stated that clothing in her apartment prior to the child's conception belonged to Muir. She also averred that when Charlotte gave her money she stated that it was from Muir. These statements are clearly out-of-court statements offered for the truth of the matter asserted and, therefore, are inadmissible. Evid. R. 802.

However, the remaining challenged testimony was clearly admissible. Muir cites testimony by McMullen which described the relationship between Charlotte and the defendant during the time Elizabeth was conceived. McMullen properly described facts which were relevant to the issue of paternity and were within her personal knowledge. See R.C. 3111.10; Evid. R. 602.

In light of the substantial evidence to support the trial court's decision, not the least of which is Elizabeth's testimony that Muir admitted that he was her father, we find that the improperly admitted hearsay testimony was harmless.

Accordingly, defendant's fifth assignment of error is overruled.

## V

In his sixth assignment of error Muir argues that the trial court erred in adopting the referee's findings of fact.

Initially, the defendant contends that the trial court did not review the hearing transcript.

It is well-established that the trial court may adopt the findings of a referee if the report contains a complete statement of the facts presented at the hearing and which serve as a basis for the referee's recommenda-

tions. See *Nolte* v. *Nolte* (1978), 60 Ohio App. 2d 227, 14 O.O. 3d 215, 396 N.E. 2d 807. A review of the referee's report reveals that it accurately sets forth the relevant evidence presented at the hearing. Therefore, the trial court did not err in not personally reviewing the hearing transcripts.

Muir also seems to argue that the trial court's decision determining paternity is not supported by the manifest weight of the evidence. The requisite standard for establishing paternity is proof by the preponderance of the evidence. *Domigan* v. *Gillette* (1984), 17 Ohio App. 3d 228, 17 OBR 494, 479 N.E. 2d 291.

There was considerable testimony that the defendant and Charlotte were having an affair during the time Elizabeth was conceived. Although Henry Roeber is listed as the child's father on her birth certificate, Charlotte and Roeber divorced three years prior to Elizabeth's birth and his signature does not appear on her birth certificate. Furthermore, McMullen testified ·that Roeber never asserted any rights to the child and, in fact, visited her only twice so that Charlotte and Roeber's son could meet Elizabeth. We note that Roeber's affidavit, executed when Elizabeth changed her name to Muir, avers that Roeber is the natural father of Elizabeth. However, under R.C. 3111.03(A)(3)(a), this sworn statement does not give rise to a presumption that he is, in fact, her biological father because Charlotte and Roeber did not marry after the child's birth.

The record also reveals that Muir assumed payment for McMullen's utility bills as a means of contributing to Elizabeth's support. At the hearing, McMullen testified that Muir had indicated that he paid these bills because Elizabeth was his daughter. Elizabeth also testified that Muir admitted that he was her father and promised to support her. Furthermore, it appears from the hearing testimony that the actual reason Muir terminated his support of Elizabeth was his disapproval of her boyfriend.

In light of these facts and circumstances, we find that the plaintiff has met her burden of proof and the trial court did not err in determining that Muir was Elizabeth's natural father.

Accordingly, Muir's sixth assignment of error is not well-taken.

## VI

In his seventh assignment of error, Muir asserts that the trial court erred in permitting the referee to question Elizabeth outside the presence of counsel. We disagree.

Civ. R. 53(C) gives a referee "the power to regulate all proceedings in every hearing before him * * * and to do all acts and take all measures necessary or proper for the efficient performance of his duties * * *." Furthermore, we note that the rule also allows a referee to examine witnesses personally.

In the instant case, the referee chose to interview Elizabeth, a minor at the time of the hearing, without the presence of counsel. However, a court reporter was present and the interview is part of the trial record. See *Walker* v. *Walker* (1974), 40 Ohio App. 2d 6, 69 O.O. 2d 3, 317 N.E. 2d 415. In light of the acrimony displayed upon the hearing record and the sensitive nature of the proceedings, we find that the referee's decision was appropriate. The record reveals that before speaking with Elizabeth, the referee allowed both lawyers to submit questions they would like addressed and, in fact, those questions which were relevant to the proceedings were touched upon by the referee in his interview of the child. We note that defense counsel submitted questions regarding Elizabeth's sexual relations, if any, with her

boyfriend. Such irrelevant questions further justify the referee's decision to limit examination of the minor in this fashion. The trial court did not err in precluding the defendant from cross-examining Elizabeth.

Accordingly, this assignment of error is not well-taken.

*Judgment affirmed.*

JACKSON, P.J., and PATTON, J., concur.

### Appendix

#### I

"The trial court committed prejudicial error and rendered a judgment contrary to law."

#### II

"The trial court committed prejudicial error in determining that the plaintiff is a proper party to file under R.C. [Chapter] 3115."

#### III

"The trial court committed prejudicial error in failing to rule on the motion to dismiss filed on or about December 20, 1984."

#### IV

"The trial court committed prejudicial error in determining that defendant asserted a defense of non-paternity."

#### V

"The trial court committed prejudicial error in the admission of evidence contrary to law."

#### VI

"The trial court committed prejudicial error in adopting findings of fact of the referee without consideration of the transcripts of the referee's hearing which were objected to by the defendant and supported with a copy of all testimony presented to the referee."

#### VII

"The trial court committed prejudicial error in precluding counsel from cross-examining a witness and conducting a 'hearing' with only the witness and referee present."