**Thomas v. Miller**

*Gina R. Brownfield,* for plaintiff.
*Linda F. Gerencser,* for defendant.

HUMMER, *J.,* December 9, 1993—Before the court are Kathy Thomas and Shannon Miller on defendant's motion for post-trial relief. On December 28, 1990, plaintiff sued defendant for support of her minor child, Jacquelynne A. Thomas. She initiated the action in Florida under the Revised Uniform Reciprocal Enforcement of Support Act. Defendant denied paternity of the child and subsequently on February 2, 1993, plaintiff filed a complaint to establish paternity, alleging defendant, Shannon Miller, to be the father of Jacquelynne A. Thomas.

Both parties and the child submitted to blood tests which did not exclude the defendant, and cited a probability of paternity of 99.93 percent. A non-jury trial was held on August 12, 1993 before this court, where plaintiff's testimony was presented, pursuant to RURESA, in the form of a sworn paternity affidavit, executed and notarized in Florida. In addition plaintiff presented the factual testimony of Erica Yarnell and the expert testimony of Dr. Deborah Cutter as to the blood tests. The court found defendant to be the father of the child.

Defendant subsequently filed a motion for post-trial relief, alleging that the court erred in admitting the form affidavit completed by plaintiff to establish plaintiff's claim of paternity in that it was inadmissible hearsay and violated defendant's right to due process of law.

### DISCUSSION

Plaintiff initiated this action for paternity in Florida under the Uniform Reciprocal Enforcement of Support

Act, which was approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association in 1950. In 1968 substantial amendments to URESA created the Revised Uniform Reciprocal Enforcement of Support Act, which was adopted by Pennsylvania at 23 Pa.C.S. §4501.

URESA was enacted to address the problem of interstate enforcement, due to the increased mobility of society. The court in *Ivey v. Ayers,* 301 S.W.2d 790 (Mo. 1957) explained:

"Prior to the enactment of these laws great difficulty was experienced in compelling husbands and fathers who left the state to provide support for their dependents. *The increasing number of runaway husbands and fathers created a social problem which compelled interstate cooperation in order to obtain support for destitute dependents, and led to the enactment of the reciprocal enforcement of support laws.* One of the primary purposes of these laws was to insure that he who performs a man's part in procreation shall also perform a man's part in providing support for his progeny." *Id.* at 794. (emphasis added)

In the present action, defendant alleges that the court erred in admitting the plaintiff's sworn paternity affidavit which was executed and notarized in Florida. Under the paternity provision of RURESA, the trial court has the discretion to determine whether the presence of the plaintiff at trial is required to make a proper determination of paternity. The statute states:

"If the obligor asserts as a defense that he is not the father of the child ... and it appears to the court that the defense is not frivolous and if both the parties are present at the hearing *or the proof required in the case indicates that the presence of either or both is*

158

*not necessary,* the court may adjudicate the paternity issue." 23 Pa.C.S. §4527. (emphasis added)

It would be inconsistent with the purpose of RURESA to require the plaintiff to travel to a foreign jurisdiction, in this case from Florida to Pennsylvania, in order to adjudicate paternity and enforce support for her child. The reasoning in support of RURESA was to enable mothers to collect support from out-of-state fathers, who otherwise may escape responsibility for their children, without placing an undue burden of travel and expense upon the mother.

Further, under the code of federal regulations for public welfare, a federal committee designed uniform URESA documents, including the interstate paternity affidavit at issue here. 45 CFR §303.7(b)(3) of 1992 provides:

"(b) ... The [initiating state] IV-D agency must: (3) Provide the IV-D agency in the responding state, accurate information to act on the case by submitting with each case any necessary documentation and either the Interstate Child Support Enforcement Transmittal Form or the URESA Action Request Forms package as appropriate." 45 CFR §303.7(b)(3).

Thus, the use of plaintiff's paternity affidavit is mandated by statute. Upon receipt of this information, it is then the *responding state's* responsibility to handle the procedure for the establishment of paternity, if necessary, prior to the support order:

"(c) *Responding state IV-D agency responsibilities* ... (7) the IV-D agency must provide any necessary services as it would in intrastate IV-D cases by:

"(i) Establishing paternity in accordance with section 303.5 of this part and attempting to obtain a judgment

for costs should paternity be established." 45 CFR §303.7(c)(7).

Although Pennsylvania has no supporting case law under URESA or RURESA, other jurisdictions. who have likewise adopted URESA as state law have ruled on the admissibility of affidavits accompanying a URESA petition. "The purpose of a URESA proceeding is to provide a simple, fair and convenient method of enforcing a support obligation without having to extradite the payor spouse to another state." *Barnes v. State,* 558 So.2d 948, 949, 950 citing *Ashwood v. Ashwood,* 371 So.2d 924 (Ala. Civ. App. 1979). To prove the claim of the petitioner, the petitioner may present, for example, an affidavit in support of petition, depositions, interrogatories or prior court orders. See *Ex parte Evans,* 545 S.2d 81 (Ala. Civ. App. 1989). Addressing the evidentiary issue of the mother's petition, the court in *Barnes v. State,* found that "the mother's affidavit is acceptable proof of her allegations." *Barnes v. State,* 558 So.2d at 950.

In addition to her sworn testimony in the form of the paternity affidavit, the plaintiff also provided the court with the factual testimony of Erica Yarnell which confirmed plaintiff's testimony of access by the defendant during the time of conception.

The court was also provided with evidence of genetic tests which are considered prima facie evidence of paternity pursuant to 23 Pa.C.S. §4343(c)(2). Blood tests which were given to both parties and the child, did not exclude the defendant, and cited a probability of paternity of 99.93 percent. These tests were further supported by the expert testimony of Dr. Deborah Cutter who stated that these test results show that it is extremely likely that the defendant is the father of this child.

In light of the above combined evidence, the court finds the presence of the plaintiff is not necessary, beyond her sworn testimony presented in the affidavit of paternity, for the court to adjudicate the issue of paternity. See 23 Pa.C.S. §4527.

Defendant's claim which alleged a violation of due process resulting from defendant's inability to confront the plaintiff is misplaced in these proceedings. Paternity is considered a civil proceeding, and thus governed by the Rules of Civil Procedure. *Com. v. Roy,* 322 Pa. Super. 218, 469 A.2d 261 (1983).

In addition, the Rules of Civil Procedure apply to URESA proceedings, unless clearly inapplicable by their nature. *McMullen v. Muir,* 34 Ohio App. 3d 241, 517 N.E.2d 1381 (1986). URESA was instituted to facilitate actions for child support with its provisions to be liberally construed. Certainly the primary focus of the statute is the duty of support owed by a parent. *Id.* at 244, 517 N.E.2d at 1384.

The right to confront witnesses, which defendant purports to assert, is limited to criminal proceedings, and therefore is inapplicable in a paternity hearing. *Commonwealth v. Shaffer,* 175 Pa. Super. 100, 103 A.2d 430 (1954). Furthermore, if Defendant had wished to confront plaintiff's sworn testimony, he had the opportunity to request a deposition of the plaintiff pursuant to 23 Pa.C.S. §4520. He chose not to pursue this opportunity.

Finally, the admission of the paternity affidavit, even if considered to be inadmissible hearsay, would constitute harmless error as the preponderance of the evidence was sufficient to find defendant to be the father, even without such testimony. *See Minnich v. Rivera,* 509 Pa. 588, 506 A.2d 879 (1986) (evidentiary standard in paternity trial, proof by preponderance of evidence,

as prescribed by 42 Pa.C.S. §6704(d), satisfies due process) and see *McMullen, supra* at 1386 (In light of the substantial evidence to support the court's decision, the improperly admitted hearsay was harmless).

Therefore, based on the foregoing analysis, the court enters the following order:

## ORDER

And now, December 9, 1993, the defendant's motion for post-trial relief is denied and the defendant is directed to appear upon proper notice at a support conference to establish an appropriate support order.