OPINION.
{¶ 1} Plaintiffs, Thomas H. Lagos, and Matina K. Lagos, appeal from a judgment in the amount of $50,981.02, plus prejudgment interest, in favor of Defendant, Field Associates, Inc. ("Field"), on its counterclaim for breach of contract.
 {¶ 2} The underlying litigation arose out of a roofing job that Field performed on apartment buildings in Kettering that formerly were owned by Matina K. Lagos. Thomas H. Lagos is her spouse. Thomas Lagos instituted an action against Field, alleging defective design and workmanship. Field counterclaimed for breach of contract, alleging that it had not been paid in full for the work it performed, and joined Matina Lagos as a third-party defendant. Matina Lagos then filed her answer, as well as a counterclaim against Field containing all the allegations that were in the complaint that Thomas Lagos had filed.
 {¶ 3} The parties had entered into an oral contract concerning the roof repair work in 1994. Field completed its work in 1995. The initial pleadings were filed the same year. The matter came on for trial to the court, before a visiting judge, on April 26 and July 12, 1999. The trial court issued a final entry containing written findings of fact and conclusions of law on March 12, 2002. The court found against the Lagos's on claims and in favor of Field on its breach of contract counterclaim, awarding Field a money judgment in the amount of $50,981.02, plus interest on that amount from June 30, 1994, until the judgment is satisfied. The Lagos's filed a notice of appeal from the judgment on April 10, 2002.
 {¶ 4} The Lagos's filed a second or amended notice of appeal on September 11, 2002, from an Amended Judgment Entry the trial court had filed on August 2, 2002. The Amended Judgment Entry specified that the amount of prejudgment interest owed was $39,248.38, and awarded that plus money damages in the amount of $50,981.02, plus post-judgment interest on the total of the two amounts, and costs. We found this second notice was not time-barred because of a failure of service, and ordered the two appeals consolidated.
 {¶ 5} The parties have filed two sets of briefs, one pertaining to the issues raised concerning the March 12, 2002 judgment and issues raised concerning the other to be the August 2, 2002, Amended Judgment. The assignments of error they present will be considered in the order in which Appellants' briefs were filed.
 Appellants' Brief Filed August 26, 2002 FIRST ASSIGNMENT OF ERROR {¶ 6} "The trial court committed prejudicial error by admitting highly prejudicial testimony over objection and then relying on that prejudicial testimony in its findings of fact."
 {¶ 7} Matina Lagos testified on direct examination that Field's work was defective. She also testified concerning the costs of repairs to the work that were then required to put it right and the cost of repairing collateral damage to her property that resulted from those defects.
 {¶ 8} On cross-examination, Matina Lagos was asked whether she and her husband had since sold the property. She responded that they had. She was then asked the price they paid for it and the price at which it was sold. Her attorney objected that the matter was irrelevant. Field replied that it was relevant to the damage claim. The trial court overruled the objection. Matina Lagos then testified that she had paid approximately $2.9 million for the property and later sold it for approximately $5.1 million.
 {¶ 9} The Lagos's renew their relevance argument on appeal. They also argue that the evidence should, even if relevant, have been excluded pursuant to Evid.R. 403(A) because it tended to unduly prejudice the trier against the Lagos's on account of their wealth. They also object to the court's finding of fact concerning the matter.
 {¶ 10} When trials are to the court, as this was, the risk of prejudice resulting from introduction of evidence that might have the potential to inflame a jury is greatly diminished. We see no reason to find that the trial court was so unduly prejudiced by this evidence that its exclusion was required by Evid.R. 403(A). In any event, the Lagos's did not present that particular argument as grounds for their objection, and therefore waived any error in that regard for purposes of appeal.
 {¶ 11} The sole ground on which the Lagos's objection was based was that the matter which the question sought to elicit is irrelevant. "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. All relevant evidence is admissible unless otherwise provided by law. Evid.R. 402.
 {¶ 12} The Lagos's prayed for four money judgments totaling $480,000 against Field on their claim alleging defective design and workmanship. Matina Lagos testified on direct examination to some of the facts on which those damage claims were based. The profits that the Lagos's nevertheless realized when they soled the property is relevant to their damages claim. The trial court did not abuse its discretion when it overruled the Lagos's objection to the question eliciting that information.
 {¶ 13} Finally, the trial court's reference to the purchase and sale prices of the property in its findings of fact, to which the Lagos's also object, appear to relate to the fact that it was Matina Lagos who purchased and sold the property at those amounts, and that Thomas Lagos never had an ownership interest of any kind in the property. That finding supports the court's later conclusion that Thomas Lagos is not a real party in interest in this dispute. Any significance which the amounts the court found and recited is limited to that connection, and had no apparent bearing on its judgment against the Lagos's and in favor of Field.
 {¶ 14} The first assignment of error is overruled,
 SECOND ASSIGNMENT OF ERROR {¶ 15} "The trial court committed prejudicial error by failing to properly apply the evidence presented in the transcript. The decision is against the manifest weight of the evidence of the transcript."
 {¶ 16} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as against the manifest weight of the evidence." C.E.Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, Syllabus by the Court. The "weight of the evidence" analysis was explained inState v. Thompkins (1997), 78 Ohio St.3d 380:
 {¶ 17} "Weight of the evidence concerns "the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find thegreater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's, supra, at 1594." Id., at p. 387.
 {¶ 18} The trial court's judgment cannot be reversed merely because it is contrary to some evidence. The judgment must be shown to be contrary to the obvious and gross probative value of all the admissible evidence that was before the trial court. That showing necessarily challenges the trial court's rationale for the judgment it reached. However, a reviewing court is not authorized to reverse a correct judgment because of an erroneous rationale. State ex rel. Gilmore v.Mitchell (1999), 86 Ohio St.3d 302. The judgment must be sustained if there are any grounds to support it. Thatcher v. Goodwill Industries ofAkron (1997), 117 Ohio App.3d 525.
 {¶ 19} A "manifest weight" argument does not permit a second bite of the apple. The trial court's findings of fact and the legal conclusions it reached enjoy a strong presumption of correctness. Thus, it is even more necessary that parties who claim that a judgment is against the manifest weight of the evidence support that claim with "reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7). "Broadbrush" attacks on the trial court's rationale are insufficient.
 {¶ 20} The complaint that Thomas Lagos filed and the counterclaim that Matina Lagos eventually filed contain identical factual claims. Those were that they had relied on Field to recommend and design proper roofs, and that the roofs Field installed were defective and not fit for their intended purpose.
 {¶ 21} Civ.R. 8(A) requires a claim for relief to contain "(1) a short and plain statement of the claim showing the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." The rule applies to claims for relief pleaded in counterclaims as well as in complaints. Id.
 {¶ 22} Here, the complaint and counterclaim the Lagos's filed contain clear prayers for the relief to which they claim they could be entitled upon a judgment in their favor. Those pleadings also contain operative facts necessary to portray the basis of their claims. However, neither pleading states or otherwise identifies any duty imposed by law or by contract that Field breached as a result of those facts. Absent that, the court had little guidance in knowing the law that might govern the Lagos's claims.
 {¶ 23} Once a builder undertakes a construction contract, the law imposes a duty on the builder to perform in a workmanlike manner. Velottav. Leo Petronzio Landscaping, Inc. (1982), 69 Ohio St.2d 376. "The duty to perform construction services in a workmanlike manner sounds in tort and is implied by law." Barton v. Ellis (1986), 34 Ohio App.3d 241. To that end, "[m]erely proving the existence of a defect is insufficient without showing that the defect resulted from the contractor's failure to use ordinary care." Floyd v. United Home Improvement Center (1997),119 Ohio App.3d 716, 720.
 {¶ 24} The record demonstrates that the Lagos's contracted with Field to repair and/or replace the flat roofs on the buildings in their apartment complex. After beginning work, Field discovered that a number of old roofs were below the surface roof. That had two results. First, it required Field to perform more work than the parties had contemplated. Second, the weight of the old roofs, combined with the age and condition of the buildings, had caused the supporting walls to sag. This latter problem subsequently caused rainwater to "pool" on the roofs Field installed. The only remedy for that problem was to install drains, which the buildings lacked, or to install a different kind of roof that would shed the water that fell on it.
 {¶ 25} The Lagos's were aware of the problem of sagging walls before the work began. The buildings were constructed with flat roofs. Field installed new flat roofs, which the trial court found were "good roofs." The court also found that Field had no responsibility to design or install drains as a part of the job it had undertaken to perform, or to recommend a different kind of roof.
 {¶ 26} This matter was tried to the court. In finding for Field and against the Lagos's, the court noted that the Lagos's failed to present expert testimony. The court appears to have concluded that it needed that evidence to find that Field had breached its duty of ordinary care, because that finding requires evidence that Fields' conduct fell below the standard of conduct required to satisfy that duty. In this instance, such evidence would be what a competent and responsible roofer would do in that circumstance which Field had failed to do. As the trier of fact, the court was entitled to reject the Lagos's claims for relief absent the evidence the court needed to find Field liable for a breach of its duty of care.
 {¶ 27} In place of that evidence, and for the most part, the Lagos's pointed to the defects that formed the basis of their claims and the leaks resulting from them. As we pointed out above, merely pointing to a defect is insufficient to prove a contractor's breach of its duty of care. Floyd v. United Home Improvement Center.
 {¶ 28} The Lagos's open-ended pleading might be construed to plead a breach of contract. The body of law governing the interpretation of contracts is generally applicable to building and construction contracts. 13 American Jurisprudence 2d, Building and Construction Contracts, Section 9. The essential inquiry in a breach of contract claim is always the same; what did the parties intend their rights and duties would be? The trial court found that these parties did not intend to require Field to either install drains or to install some roof other than another flat roof similar in design to the roofs the buildings already had. We can find no basis to fault the trial court's rationale.
 {¶ 29} It was reasonable on this record for the trial court to find that, as flat roofs, the roofs Field installed were "good roofs"; that is, ones that met acceptable standards for roofs of that kind. It was also reasonable for the court to find, on the record before it, that Field had assumed no duty to install drains or to recommend and install a different kind of roof with better drainage. Both findings have support in the record. If the Lagos's wanted to impose those additional duties on Field, they could have insisted on a written contract containing those terms. They didn't, and in consequence can't now complain that Field promised to do those things.
 {¶ 30} The Lagos's were apparently aware of the sagging problems that caused these difficulties to occur, and as owners of the buildings are charged with the responsibility to correct or cure the problem, at least in relation to the difficulties that have since occurred. They can't pass that responsibility off to someone else on the basis of an oral agreement the purposes of which were limited and different.
 {¶ 31} The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 32} "The trial court committed prejudicial error by allowing so much time to elapse between the presentation of the evidence and the rendering of its final decision which negatively impacted on appellants' rights to a just decision."
 {¶ 33} The trial court heard evidence in April and July of 1999. It rendered written findings of fact and conclusions of law and its judgment based on them on March 12, 2002. Thus, three years had passed since the court heard the evidence when its judgment was rendered.
 {¶ 34} Appellants do not demonstrate how they were prejudiced by this delay, except to argue that it led to the judgment against them, one which reflects "significant discrepancies between the trial court's Findings of Fact and the actual evidence introduced at trial, as pointed out herein previously . . ." (Brief, p. 19). That conclusory contention fails to satisfy the particularity requirements of App.R. 16(A)(7) that we referenced above. The trial court's findings of fact, on the other hand, are reasonably exact, and Appellants have not even attempted to show how they were factually wrong. They take issue with the trial courts' conclusions and the rationale the court employed to reach them. We previously rejected their contentions in that regard with respect to the second assignment of error.
 {¶ 35} The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR {¶ 36} "The trial court committed prejudicial error by amending ex parte its judgment entry without giving the appellants' the opportunity to be heard after the appellate court had been vested with jurisdiction."
 {¶ 37} The trial court issued its final judgment on March 12, 2002. The court had previously dismissed Thomas H. Lagos as a party. The judgment awarded money damages to Field against Matina K. Lagos "in the amount of $50,981.02, plus simple interest at the rate of 10% per annum from June 30, 1994 until such judgment and interest are paid in full, plus the court costs of this action." The Lagos's filed a notice of appeal from that judgment on April 10, 2002.
 {¶ 38} Field filed a motion in the trial court on June 14, 2002, asking the court to award post-judgment interest on both the prejudgment interest the court had awarded and on the amount of actual money damages. The motion bears a certificate of service on opposing counsel.
 {¶ 39} The Lagos's filed a motion and memorandum contra on June 28, 2002. The trial court granted Field's motion by Amended Judgment on August 1, 2002, ordering that, in addition to the $50,981.02 in money damages, prejudgment interest in the amount of $39,248.38 was awarded, plus post-judgment interest on the total of both.
 {¶ 40} The Lagos's contend that, because the earlier March 12, 2002 judgment had been appealed, the trial court lacked jurisdiction to grant Civ.R. 60(B) relief from that, which is the nature of the relief its August 1, 2002 Amended Judgment granted.
 {¶ 41} Field argues that its June 14, 2002 motion was not a Civ.R. 60(B) motion at all, but was instead a motion filed pursuant to Civ.R. 60(A), to correct an oversight or omission in the trial court's March 12, 2002 judgment and order. Because the court's ruling on the motion in no way deprived this court of its appellate jurisdiction, the trial court therefore retained jurisdiction to grant the relief awarded on its August 1, 2002 Amended Judgment.
 {¶ 42} An award of prejudgment interest relates back to the date of the breach or other act on which an award of money damages was granted, and is calculated from that date on the amount of those damages until the date post-judgment when the obligation is fully satisfied. The March 12, 2002 judgment granted that relief. The subsequent August 1, 2002 judgment compounded interest by awarding interest on the prejudgment interest the court had previously awarded.
 {¶ 43} The relief which the Amended Judgment granted varied the terms of the relief the court had granted in its March 12, 2002 judgment. That was a final judgment which was then on appeal. The trial court retained jurisdiction to do only those things that would not interfere with the power of this court to review, and then to affirm, reverse, or modify, the judgment of March 12, 2002, from which an appeal had been taken. State ex rel. Special Prosecutors v. Judges (1978),55 Ohio St.2d 94. By awarding different relief, the Amended Judgment operated to interfere with the jurisdiction of this court that had been invoked by the prior appeal. Therefore, the trial court lacked jurisdiction to enter the Amended Judgment of August 2, 2002, and it is for that reason void.
 {¶ 44} The Amended Judgment will be vacated, and the matter will be remanded to the trial court for further proceedings on the June 14, 2002 motion that Field filed, pursuant to Civ.R. 60(B).
 {¶ 45} The fourth assignment of error is sustained.
 Appellants' Brief Filed March 24, 2003 FIRST ASSIGNMENT OF ERROR {¶ 46} "The trial court committed prejudicial error in granting the defendant-appellee's motion for amended judgment."
 SECOND ASSIGNMENT OF ERROR {¶ 47} "The purported entry was accepted and entered in direct contravention of the local rules of the common pleas court of Clark County, Ohio, that govern motions in a civil case."
 THIRD ASSIGNMENT OF ERROR {¶ 48} "The trial court improperly ruled upon the motion for amended judgment entry since the case had already been appealed, thereby divesting the trial court of jurisdiction."
 FOURTH ASSIGNMENT OF ERROR {¶ 49} "When the purported entry was filed in the correct common pleas court, the individual ordering the entry was no longer a common pleas court judge and therefore had no authority to execute the entry."
 {¶ 50} The error which these assignments involve has been rendered moot by our determination of the fourth assignment of error in the brief Appellants filed on August 26, 2002. Therefore, per App.R. 12(A)(1)(c), we decline to consider or rule on these assignments.
 Conclusion {¶ 51} The trial court's judgment filed on March 12, 2002, will be affirmed. The Amended Judgment journalized on August 2, 2002, will be reversed and vacated. The case will be remanded for further proceedings on the motion Appellants filed on June 14, 2002.
FAIN, P.J. and WOLFF, J., concur.